| | |
|---|---|
| **Law Offices of Avrum J. Rosen, PLLC** | **Hearing Date: March 19, 2025** |
| | **Hearing Time: 10:00 a.m.** |
| 38 New Street | **Objection Deadline: March 12, 2025** |
| Huntington, New York 11743 | |
| (631) 423-8527 | |
| Avrum J. Rosen, Esq. | |
| Alex E. Tsionis, Esq. | |

*Counsel to the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                    Chapter 11

PROSPECT 631 VENTURE CORPORATION,           Case No.: 24-41116-jmm

                                        Debtor.
-----------------------------------------------------------X

### DEBTOR'S OBJECTION TO CLAIM NO. 2 FILED BY JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS SERVICER FOR CITIBANK, N.A.

Prospect 631 Venture Corporation, the debtor and debtor in possession (the "Debtor"), as and for its Objection to Claim No. 2(the "POC"), annexed hereto as Exhibit "A", filed by JPMorgan Chase Bank, National Association, as servicer for Citibank, N.A.("CitiBank") and respectfully represents as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this Chapter 11 case and of this objection is properly before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The statutory predicate for the relief requested herein are sections 105, 501, 502, and 724(a) of Title 11 of the United States Code (the "Bankruptcy Code, Rules 3007, 6009 and 7001 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule").

### RELEVENT FACTS

1

4. On March 13, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in this case.

6. The Debtor is a domestic business corporation with its corporate office located at 146 Spencer Street, Suite 2006, Brooklyn, New York 11205.

7. The Debtor is the thirty percent (30%) owner of the real property commonly known as 631 Prospect Place, Brooklyn, New York 11216 (the "Property"). The remaining seventy percent (70%) of the Property is owned by Marie Duliane Milord-Jean. The Property is a four-unit residential building that is currently vacant.

8. The foreclosure of the Property began in 2006. It has been litigated for many years, including a period of almost ten (10) years, when the plaintiff took no action, which led to the case being dismissed and later reinstated. Eventually a judgment of foreclosure and sale (the "Judgment") was entered, and an appeal was filed. The appeal was filed before the Debtor acquired its interest in the Property.

9. CitiBank filed proof of claim No. 2 (the "POC"), which, for some reason, did not refer to the judgment under appeal. However the basis for the POC was the Referee's Report. A copy of that POC is annexed hereto as Exhibit "A".

10. This case was filed to preserve the Debtor's equity during the pendency of the appeal. That appeal was decided on December 11, 2024 and the Debtor's co-owners were successful in having the Judgment vacated and the matter remanded to the referee for a new evidentiary hearing on liability and the computation of how much, if anything , was due. At the

heart of that decision was the fact that the Plaintiff did not proffer any admissible evidence under the prior order of reference to ascertain liability or its standing. A copy of that decision is annexed hereto as Exhibit "B".

11. Annexed hereto as Exhibit "C", is the co-owners Brief and Record on Appeal that led to this decision. As will be discussed below, With the vacating of the Judgment, the *Rooker-Feldman Doctrine* no longer bars this Court from determining the validity of this POC. By filing the POC, CitiBank has consented to the jurisdiction of this Court to determine the validity and extent of any amount due under the POC.

12. On the merits, CitiBank cannot prevail in proving the chain of title on it being in possession of the note and mortgage at the time it commenced the foreclosure action and in possession of same during the time it prosecuted same. This is proven, conclusively, in the POC, wherein CitiBank attached all of the assignments, which include an assignment into CitiBank, *after this case was filed* to try and "fix" its lack of standing. Moreover, as the Decision pointed out, CitiBank had no witness competent to prove its case. As a result, the POC must be expunged in its entirety. In the event that this Court determines that CitiBank did and does have standing to assert the POC, then the Debtor asserts that under applicable New York State law, interest on the note and mortgage must be abated for a period of at least 4000 days, due to the Plaintiff's failure to timely prosecute the foreclosure action.

## ANALYSIS OF APPLICABLE LAW

A. The Shifting Burden

13. Section 502(a) of the Bankruptcy Code states in pertinent part that:

"A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."

11 U.S.C. § 502(a).

14. "The party objecting to the proof of claim has the burden of going forward with sufficient evidence (i) to rebut the validity or amount of the claim asserted or (ii) to show the claim should be disallowed." *In re Ideal Mortg. Bankers, Ltd.,* 539 B.R. 409, 425 (Bankr. E.D.N.Y. 2015).

15. "Once the objecting party succeeds in overcoming the *prima facie* effect given to a proof of claim, the burden shifts back to the claimant to provide support for the validity of its claim by preponderance of the evidence that the claim should be allowed under applicable law." *Id.*

16. Section 502(b)(1) of the Bankruptcy Code States:

…such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured…

11 U.S.C. § 502(b)(1).

17. "To determine whether a claim is allowable by law, bankruptcy courts look to 'applicable nonbankruptcy law.'" *In re Residential Capital, LLC*, No. 12-12020, 2014 Bankr. LEXIS 481, at *11 (Bankr. S.D.N.Y. Feb. 5, 2014).

18. "Once the objecting party succeeds in overcoming the *prima facie* effect given to a proof of claim, the burden shifts back to the claimant to provide support for the validity of its claim by a preponderance of the evidence that the claim should be allowed under applicable law." *In re Gallagher*, 657 B.R. at 199-200. "The ultimate burden of proof, however, always lies with

the claimant." *In re Taranto*, No. 10-76041, 2012 Bankr. LEXIS 1320, at *18 (Bankr. E.D.N.Y. Mar. 27, 2012); *Primavera Familienstifung*, 130 F. Supp. 2d at 540. *In re 37-02 Plaza LLC*, 387 B.R. 413, 417 (Bankr. E.D.N.Y. 2008).

19. In the case at bar, the entire basis for the POC was the Judgment, which has now been vacated. As this Court recently decided in *Richmond Hosp. LLC v. Shaughnessy (In re Richmond Hosp. LLC)*, Nos. 22-40507-jmm, 24-01057-jmm, 2025 Bankr. LEXIS 55 at *23 (Bankr. E.D.N.Y. Jan. 14, 2025), where this Court held:

> A creditor desiring the opportunity to receive a distribution from the bankruptcy estate on account of its claim may file a proof of claim. 11 U.S.C. §§ 501(a), 502(a); Fed. R. Bankr. P. 3021. By filing a proof of claim, a creditor consents to the Bankruptcy Court's jurisdiction to adjudicate the claim. *See Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S. Ct. 330, 112 L. Ed. 2d 343 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power."); *see also Penson Fin. Servs. v. O'Connell (In re Arbco Cap. Mgmt., LLP)*, 479 B.R. 254, 262-63 (S.D.N.Y. 2012) ("A creditor may subject itself to the binding authority of the bankruptcy court by filing a proof of claim against the bankrupt estate.").
>
> Once a proof of claim is filed, the debtor and all parties in interest may object to the proof of claim, including objecting on the grounds that the "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Generally, the claims resolution process occurs in the Bankruptcy Court, even if the claims against the debtor are the subject of state court actions that were pending at the time the bankruptcy case was filed and those actions were not removed to the bankruptcy court.

20. Thus, the adjudication of the POC is properly before this Court. A review of the POC demonstrates that CitiBank, the alleged holder of the note and the party that commenced this action, sold it soon after and was never back in possession of it until long after this case was commenced. The loan is taken out from Citibank sometime prior to 2006 and assigned to Washington Mutual Bank ("WaMu") on July 12, 2007. Strangely, however, the default letter is sent by WaMu on December 19, 2006 more than six (6) months before it owned the loan.

Exhibit "C" Record on appeal at Pg.R-69. WaMu is substituted in as plaintiff in the foreclosure action in 2008. WaMu is then taken over by the FDIC.

    21.    Thereafter Chase Bank ("Chase") is selected by the FDIC to wind down WaMu's assets. However, it is not clear, which entity actually held the Note in this case.[1] There is no assignment into the FDIC or Chase. However, subsequent assignments appear to assert that the FDIC had the actual note. However, it is crystal clear that as of 2007 that Citibank had no interest in the loan, even though it asserted that it did for the next ten years. This is documented in the affidavit of the Chase V.P. who testified and attached a power of attorney granted by CitiBank in **2012**, four years after CitiBank had assigned the loan, appointing Chase as its agent in fact to service the loan.[R-76-77],

    22.    The next assignment of the mortgage is on November 29, 2017 between the FDIC (which means it held the note and mortgage that entire time, not Chase and not CitiBank) to Chase, as attorney in fact for Citibank. At this juncture, it must be pointed out that one of the main reasons for the reversal of the Judgment was the fact that in **2012**, Chase submitted an affidavit to the state court, without any of the foundational documents that would normally be attached, that it was acting as the servicer for Citibank and persisted in that representation, even though it entered into the assignment on behalf of CitiBank in **2017**.

---

[1] "A plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced (*see Kondaur Capital Corp. v McCary*, 115 AD3d 649, 650, 981 NYS2d 547 [2014]; *see HSBC Bank USA v Hernandez*, 92 AD3d at 843; *Bank of N.Y. v Silverberg*, 86 AD3d at 279). Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation *(see Aurora Loan Servs., LLC v Taylor*, 114 AD3d 627, 980 NYS2d 475 [2014]; *HSBC Bank USA v Hernandez*, 92 AD3d at 844; *U.S. Bank, N.A. v Collymore*, 68 AD3d at 754). As a general matter, once a promissory note is tendered to and accepted by an assignee, the mortgage passes as an incident to the note (see *Bank of N.Y. v Silverberg*, 86 AD3d at 280). However, the transfer of the mortgage without the debt is a nullity, and no interest is acquired by it *(see Bank of N.Y. Mellon v Gales*, 116 AD3d 723, 982 NYS2d 911 [2014]; *Bank of N.Y. v Silverberg*, 86 AD3d at 280), because a mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation *(see Deutsche Bank Natl. Trust Co. v Spanos*, 102 AD3d 909, 911, 961 NYS2d 200 [2013])." *US Bank Nat'l Ass'n v. Faruque,* 2014 NY Slip Op 05785, 120 A.D.3d 575 (App. Div. 2nd Dept.2014).

23. Then on November 29, 2024, Chase, purports to assign the mortgage to Citibank, in its own name, even though it never owned it and only owned it as attorney in fact for Citibank, as per the prior assignment, under a power of attorney given at a time when CitiBank had no interest in the loan. However, if this assignment were valid, it would also mean that Chase had the original note through its acquisition of WaMu and had further deceived the state court by asserting that the loan was owned by CitiBank since the inception of the foreclosure action.

24. On November 30, 2024, the very next day, Chase as successor in interest to WaMu assigns the mortgage to Chase. This makes no sense, unless you switch the dates on these two assignments. This again demonstrates that until either 2017 or 2024, Citibank had no rights in the mortgage and note and that the entire foreclosure action was prosecuted by a party without standing to do so. It also proves that when the motion was made to reinstate the dismissed action, Citibank had no standing to bring that motion and this entire action is barred by the statute of limitations.

25. This confusion may be why there is then a post-petition Gap Correction assignment filed on May 15, 2024 from CitiBank to Chase for the period of November 29, 2017 to January 30, 2024 .

26. On June 7, 2024 (22 days later) the proof of claim filed by Chase on behalf of CitiBank is filed. None of this is disclosed and the assignments are attached, not in date order and the Judgment is not even attached.

27. Courts have consistently refused to accept the unsubstantiated allegations of servicing agents, especially when there is a gap or inconsistency in the chain of the assignments. *Wells Fargo Bank, N.A. v. Weekes*, 2014 NY Slip Op 51895(U), 46 Misc. 3d 1205(A), 7 N.Y.S.3d 245 (Sup. Ct. Kings County 2014); *Wells Fargo Bank N.A. v. Khan*, No. 714459/2016, 2018 N.Y. Misc. LEXIS 26492 (Sup. Ct. Mar. 14, 2018). Here, the servicing agent held a power of attorney

from a party that had no rights in the not and mortgage and was completely without authority to act. The Demand Letter appears to be from a party that did not yet own the note and mortgage, , Lastly, the assignments indicate two divergent and contradictory chains of assignment, and there appears to be no one that can accurately testify or authenticate any of the documents needed for the Claimant to prevail in this objection.

28. Plaintiff's delays in prosecuting the action also warrants tolling of interest. Interest should be tolled as it took Plaintiff over fifteen years to obtain the Judgment, without any delay attributable to Defendants, other than the successful appeal.

29. CPLR 5001(a) provides:

 "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion."

"A foreclosure action is equitable in nature. As relevant here, CPLR 5001(a) provides that 'in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.' The exercise of the court's discretion in determining the appropriate interest is governed by the particular facts in each case." *U.S. Bank, N.A. v. Peralta*, 191 A.D.3d 924, 925 – 26 (2nd Dep't 2021) . In *Peralta*, for example, the Appellate Division, after specifically deducting for bankruptcy stays, tolled approximately eighty-two (82) months (almost seven (7) years of interest because of delays caused by the plaintiff.

30. More recently, the Appellate Division continues to toll interest for specific time periods where plaintiff mortgagee failed to explain why there was a delay in promptly moving an action along. *Deutsche Bank Nat'l Tr. Co. v. Ould-Khattri*,201 AD3d 701 (2d Dep't 2022).

Here, the record is devoid of any explanation by Plaintiff for the repeated filing of motions and the subsequent withdrawal of them, which only benefited Plaintiff by allowing additional interest to accrue. (R. 191).[2]

31.  Plaintiff was awarded an Order of Reference on December 17, 2008, yet did nothing productive for over eight (8) years until it moved on December 13, 2017, to vacate the prior order of reference and for a new order of reference.[3] *Id.* During that time, Plaintiff's motion for judgment of foreclosure and sale was withdrawn on January 5, 2011. After the withdrawal, Plaintiff did nothing for over two years, which resulted in the lower court issuing an order dismissing the action on July 23, 2013. *Id.*

32.  As the prior discussion demonstrated, these dates correlate with the fact that it is apparent that the Citibank no longer had the note and mortgage as of 2007 and, apparently, no one else had any idea who held them until the 2024 "Gap Assignment".

33.  At a minimum, interest should be tolled from the date of the long form order granting a default judgment on November 13, 2009 until July 23, 2013 dismissal order, which is 1,348 days. (R,191: 269). Importantly, the Second Department has stated even if Plaintiff "did not cause this delay, it should not benefit financially, in the form of accrued interest" because this delay is not attributable to Defendant whatsoever. *Greenpoint Mortg. Corp. v. Lamberti*, 155 AD3d 1004, 1005 (2d Dep't 2017).

34.  Although, the Second Department ultimately reversed the order denying Plaintiff's motion to vacate the dismissal order, Defendant should not be punished for the 1,078 days between the denial of Plaintiff's motion to vacate dated September 3, 2014, and the date of the Appellate

---

[2] References to "R" are to the Record on Appeal which is annexed hereto as Exhibit "C".
[3] A comparison of the dates of the various assignments tie into these motions and show that it appears that the Plaintiff knew it chain of assignments were deficient and entered into these machinations to attempt to conceal the facts from the court.

Division's decision on August 16, 2017, (R, 191). *Washington Mut. Bank, FA v. Milford-Jean-Gille*, 153 AD3d 754, (2d Dep't 2017).

35.     "[A] tolling and cancellation of interest may also be warranted where there is an unexplained delay in prosecution of a mortgage foreclosure action." *GMAC Mortg., LLC v. Yun*, 206 AD3d 798, 798-99, N.Y,S.3d 505, 507(2d Dep't 2022) (internal citations omitted).

36.     Additionally, rather than continue to prosecute the action after the Appellate Division's decision, Plaintiff sought to vacate its Order of Reference dated November13, 2009, and move for a new order of reference on December 13, 2017. (R, 191;186-189). Plaintiff sought to undue all that it accomplished over eight years ago, which is a delay of an additional 2,952 days. (R 191;186-189). There is no equitable explanation to justify the Plaintiff being awarded interest from the date Plaintiff filed the rejection of Defendant's answer on July 27, 2007, until December 13, 2017, the date Plaintiff moved for a second order of reference, which totaled 3,792 days. (R, 262;191).  Moreover, Plaintiff should not benefit by moving a second time for judgement of foreclosure and sale on June 24, 2019, and then withdrawing it on October 16, 2019 for a total of 134 days. (R, 191).

37.     Despite the September 4, 2018 Order of Reference ordering that the referee issue a report within sixty (60) days and then Plaintiff moving to confirm the Report within another sixty (60) days, this did not occur. Instead, over 400 days passed before that was done.  Lastly, there should be no accrual of interest during the time of the appeal, as the Dedtor prevailed.  Thus, at most, there should be two years of interest awarded.

38.     Accordingly, the Claim should be reduced to reflect the tolling of interest for an amount to be determined by this Court, if it determines that CitiBank has standing to assert this Claim in the first instance.

WHEREFORE, it is respectfully submitted that the POC be reduced and allowed, as set forth in this Objection, together with such other and further relief as to this Court seems just and proper.

Dated: February 16, 2025  **Law Offices of Avrum J. Rosen, PLLC**
       Huntington, New York

*Counsel for Prospect 631 Venture Corporation*

By: *S/Avrum J. Rosen*_____
Avrum J. Rosen
38 New Street
Huntington, New York 11743
Tel: (631) 423-8527
arosen@ajrlawny.com