**Rosen, Tsionis & Pizzo, PLLC**  
38 New Street  
Huntington, New York 11743  
(631) 423-8527  
Avrum J. Rosen, Esq.  
Alex E. Tsionis, Esq.  

Hearing Date: September 10, 2025  
Hearing Time: 10:00 am

*Counsel to the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
-------------------------------------------------------------X  
In re:                                                                               Chapter 11

PROSPECT 631 VENTURE CORPORATION,            Case No.: 24-41116-jmm

                                               Debtor.  
-------------------------------------------------------------X

**DEBTOR'S REPLY TO CITIBANK'S OPPOSITION TO THE DEBTOR'S OBJECTION TO CLAIM NO. 2 FILED BY JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS SERVICER FOR CITIBANK, N.A.**

**TO:    THE HONORABLE JIL MAZER-MARINO**  
         **UNITED STATES BANKRUPTCY JUDGE**

Prospect 631 Venture Corporation, the above-captioned debtor and debtor in possession (the "Debtor"), submits this as and for its reply to the opposition [ECF No. 38] (the "Opposition") to the Debtor's Objection to Claim No. 2 (the "POC"), annexed to the Objection as **Exhibit "A"**, filed by JPMorgan Chase Bank, National Association, as servicer for Citibank, N.A. ("Citibank"), and respectfully represents as follows:

1.     Citibank's Opposition attempts to obfuscate the clear and admitted gaps in its chain of assignments and raises frivolous arguments to avoid addressing essential arguments in the Objection. The assignments simply do not state what counsel for Citibank claims they state. The record establishes a clear eleven (11) year gap from July 12, 2007, when Citibank assigned its interest to Washington Mutual, until the FDIC, as receiver for Washington Mutual, assigned it back to Citibank on November 29, 2017. Critically, during this eleven-year period, Citibank had no legal interest in the note and mortgage, yet continued to assert ownership and prosecute

1

foreclosure proceedings. The assignments are attached to Citibank's proof of claim. After the fact, in a flurry of assignments with incorrect dates and recordings out of sequence, Citibank and Chase have tried to obscure what transpired. However, the law is clear that corrective assignments cannot cure a lack of standing at the time an action is commenced. *See U.S. Bank Nat'l Ass'n v. Dellarmo*, 2012 NY Slip Op 2481, 94 A.D.3d 746, 942 N.Y.S.2d 122 (App. Div. 2nd Dept.) (Corrective assignment cannot be given retroactive effect).

2.     Citibank's newly submitted affidavit fails to cure the fundamental defects identified by the Appellate Division. Citibank then tries to "fix" the fact that it would need a time machine to fix the errors in the referee's report, by submitting a new affidavit, now fourteen years more remote from the last one that was rejected, which includes the words that the Appellate Division stated that needed to be in the last one. But that decision said more than that. It stated that based upon the time when Citibank took over the loan, that party could not have known the facts that took place long before the assignment. There is no basis in the new affidavit to show that the current individual has any way of knowing the business practices of the prior lenders more than twenty years ago or has access to records that would establish the required foundation for business records.

3.     Moreover, it is clear that the affiant never even looked at the file, assuming it exists, because the affiant does not even try to explain the obvious deficiencies in the chain of assignments or why there had to be two further assignments in 2024 to assign back to Citibank, thatwhich it claimed it had since 2017. The fact that Citibank required additional assignments in 2024 to "cure" its chain of title is itself evidence that its claim of continuous ownership since 2017 is false. At the very least, the Debtor would have the right, just as in a foreclosure hearing, to cross-examine the affiant as to exactly what was in the file and the foundation for the affiant's

knowledge. To say that Citibank's affidavits have been inconsistent would be an understatement.

4.      In the Opposition, counsel stated:

**Citibank's Interest in the Loan**

After origination, Fairmont sold the Loan to Washington Mutual Bank, FA ("WaMu") on or about May 19, 2004, and WaMu then sold the Loan to Citibank's predecessor in interest, CitiMortgage, Inc. ("CMI"), on or about September 14, 2004. See Willingham Aff., ¶ 7, Exh. I. WaMu thereafter acted as servicer of the Loan for CMI pursuant to a Servicing Agreement and received assignment of the Mortgage from CMI through an Assignment of Mortgage dated July 12, 2007, recorded with the Office of the City Register for the City of New York on August 1, 2007. Id. at ¶¶ 6(b), 7 and Exhs. E and J.

A little over a year later, on or about September 25, 2008, WaMu failed as an institution and entered receivership with the Federal Deposit Insurance Corporation (the "FDIC"). That same date, the FDIC, acting as receiver for WaMu, entered into a Purchase and Assumption Agreement (the "P&A Agreement") with JPMorgan Chase Bank, National Association ("Chase")…

Previously, in the prior state court pleadings CitiBank stated:

5.      But in the State Court, it was admitted that:

This action has been brought to foreclose the Mortgage executed by Marie Duliane Milord-Jean-Gilles to Mortgage Electronic Registration Systems, Inc., as nominee for Fairmont Funding, Ltd. dated April 28, 2004, on real property known as 631 Prospect Place, Brooklyn, NY 11216, (Block 1224 Lot 74), made in the original amount of $495,000.00, recorded in the Kings County Office of the City Register on June 4, 2004 in CRFN 2004000346283. The Note and Mortgage were transferred from Mortgage Electronic Registration Systems, Inc., as nominee for Fairmont Funding, Ltd. to CitiMortgage, Inc., and said transfer was memorialized by an Assignment of Mortgage executed on February 28, 2007 and recorded March 28, 2007 in CRFN 2007000159698. The Note and Mortgage were subsequently transferred to Washington Mutual Bank, FA and said transfer was memorialized by an Assignment of Mortgage executed on July 12, 2007 and recorded August 1, 2007 in CRFN 2007000394304. Subsequent to the commencement of this action, the Note and Mortgage were transferred to CitiBank, N.A. and said transfer was memorialized by an Assignment of Mortgage executed on November 22, 2017 (the original of which having been sent for recording).

6.      Yet the Affidavit submitted with the Opposition in Paragraph 4 states that the

Note was held by Fairmont and was endorsed from Fairmont to Washington Mutual (not to CitiMortgage) and was then endorsed to WaMu and then from WaMu in blank. This directly contradicts both the recorded assignments and Citibank's own pleadings in state court. Citibank's affidavit now asserts, for the first time, based upon unrecorded documents, , that the loan was sold by Chase, acting as servicer for WaMu, in 2013 to Citibank; however, no assignment of mortgage was ever filed at that time, creating another gap in the recorded chain of title.

7. A review of those unrecorded documents, which were never referenced in any pleadings, or in the proof of claim, shows that Exhibit "L" only refers to mortgages that Chase serviced on behalf of **CitiMortgage**. But CitiMortgage did not own this note and mortgage in 2013. The assignments show that it was transferred from CitiMortgage to WaMu on July 12, 2007. Exhibit "K" to the Opposition purports to be the agreement by which Chase (not CitiMortgage) acquired all of the assets of WaMu. There has been no documentation presented by the Claimant that the mortgage was ever transferred back to CitiMortgage prior to the 2013 transfer agreement annexed as Exhibit "L". Thus, the entire argument of some unrecorded assignment having cured the break in the chain of title is designed to distract the Court from the obvious break in the chain based upon the recorded chain of title.

8. The Court should examine the wordsmithing of paragraph 10 of the new affidavit very carefully. It states that Chase is "presently" in possession of the original note and asserts that Chase has had it since at least July 18, 2009. However, Chase was not the holder of the mortgage for that entire time. According to Citibank's own timeline, Chase did not acquire WaMu's assets until September 25, 2008, making the July 18, 2009 date suspect. This statement is completely at odds with the recorded assignments that show that the FDIC was in possession

of the note until the assignment dated January 30, 2024.

9. Moreover, the affidavit does not cure the deficiencies that led to the reversal of the Judgment of Foreclosure and Sale. Chase has still not proven that it was even the agent of Citibank at the time the complaint was filed and during all of the interim assignments. As the Debtor's brief stated in the appeal:

> This Court has reiterated the necessary elements for a document to be considered an admissible business in the case *Bank of New York Mellon v. Gordon*:
>
> "[T]o establish a foundation for the admission of a business record, the proponent of the record must satisfy the requirements identified in the statute. First, the proponent must establish 'that the record be made in the regular course of business—essentially, that it reflect a routine, regularly conducted business activity, and that it be needed and relied on in the performance of functions of the business.' Second, the proponent must also demonstrate 'that it be the regular course of such business to make the record ... essentially, that the record be made pursuant to established procedures for the routine, habitual, systematic making of such a record.' Third, the proponent must establish 'that the record be made at or about the time of the event being recorded—essentially, that recollection be fairly accurate and the habit or routine of making the entries assured.'" *Bank of New York Mellon v. Gordon*, 171 AD3d 197, 205, (2d Dept 2019).
>
> Here, Ms. Freedman's affidavit is based on her review of documents as she does not possess any personal knowledge of the events or transactions listed in the affidavit. (R, 61-64, ¶ 2).
>
> Ms. Freedman never testifies when her employer JPMorgan Chase Bank, National Association began servicing the loan or that the prior loan servicer's records were incorporated into her employer's records. (R, 61-64).

Exhibit "_C_" to the Claim Objection pg. 13.

10. The new affidavit appears to suffer from the same foundational defects identified by the Appellate Division and fails to establish the required business records foundation.

11. CitiBank cannot prevail in proving the chain of title because the record establishes that it was not in possession of the note and mortgage at the time it commenced the foreclosure action nor was it in possession of same during the time it prosecuted same for at least eleven (11)

years. This is proven, conclusively, in the POC, wherein CitiBank attached all of the assignments, which include an assignment back into CitiBank, *after this case was filed* to try and "fix" its lack of standing. It did not, however, attach Exhibits J and K to the opposition as part of its proof of claim, which are what it now relies upon. *U.S. Bank Nat'l Ass'n v. Dellarmo*, 2012 NY Slip Op 2481, 94 A.D.3d at 942 (App. Div. 2nd Dept.) (Corrective assignment cannot be given retroactive effect).

12. As noted in the Claim Objection, courts have consistently refused to accept the unsubstantiated allegations of servicing agents, especially when there is a gap or inconsistency in the chain of title and the assignments. *Wells Fargo Bank, N.A. v. Weekes*, 2014 NY Slip Op 51895(U), 46 Misc. 3d 1205(A), 7 N.Y.S.3d 245 (Sup. Ct. Kings County 2014); *Wells Fargo Bank N.A. v. Khan*, No. 714459/2016, 2018 N.Y. Misc. LEXIS 26492 (Sup. Ct. Mar. 14, 2018). Here, the servicing agent held a power of attorney from a party that had no rights in the note and mortgage and was completely without authority to act. The Demand Letter appears to be from a party that did not yet own the note and mortgage. Moreover, the servicer's authority derives from the owner's rights, and if the purported owner lacks title, the servicer cannot act with valid authority. Additionally, the assignments indicate two divergent and contradictory chains of assignment, and there appears to be no one who can accurately testify or authenticate any of the documents needed for the Claimant to prevail in this objection. The additional unrecorded documents provided only further confuse the issue, as they seem to imply that the Servicer thought that CitiMortgage owned this loan when it was clearly owned by Chase.

13. CitiBank erroneously tries to assert that the Debtor does not have standing to raise the challenge to the assignments because its motion to file a late answer was denied. However, that argument fails for three reasons. The first is that the order of reference and the Referee's

Report both required the Referee to examine the assignments, which the Appellate Court found were never attached to the Referee's Report. This procedural failure alone demonstrates that CitiBank failed to meet its burden of proof in the state court proceedings. The second reason is that the Kings County Local Rules expressly require that all assignments of record be attached to the Order of Reference (General Foreclosure Rule No. 5). Each Order of Reference must have appended thereto, the history of the property by way of a chain of assignment, the date of the assignment, and a reference to the tab where that assignment is located). That is because proving standing is part of the *prima facie* case that the Plaintiff must prove, even if there is a default in answering by the defendants. The third reason, which Citibank admits, is that it must also prove standing pursuant to Bankruptcy Rule 3001 in order to have an allowed claim. Under Bankruptcy Rule 3001(c), the burden is on the claimant to establish the validity and amount of its claim, including proof of ownership and standing.

14. The other basis for the Claim Objection was for the tolling of interest pursuant to N.Y.C.P.L.R. § 5001. Citibank's counsel never addresses this on the merits. Instead, Citibank makes the untenable assertion that this Court cannot apply that statute. This argument lacks merit given that Bankruptcy Courts routinely apply that section in determining the correct amount of interest. *In re Avaya, Inc.*, 608 B.R. 366 (Bankr. S.D.N.Y. 2019) (Applying C.P.L.R. Sec. 5001) in deciding a claim objection); *see also, In re Madison 92nd St. Assocs. LLC*, 472 B.R. 189 (Bankr. S.D.N.Y. 2012) (analyzing pre and post judgment interest under the C.P.L.R.).

15. The only other defense raised by Citibank is that it should not be held accountable for delays beyond its control. However, this argument fails both legally and factually. First, the delays in this case were largely attributable to Citibank's own defective pleadings and chain of title issues. Importantly, New York Courts have held that even if Plaintiff "did not cause this

delay, it should not benefit financially, in the form of accrued interest" because the delay is not attributable to Defendant in any way. *Greenpoint Mortg. Corp. v. Lamberti*, 155 AD3d 1004, 1005 (2d Dept 2017). Second, Citibank's prosecution of an action without proper standing constitutes delay attributable to the plaintiff's own deficiencies. The reduction in interest should be granted as set forth in the Claim Objection in the full amount.

16.     Furthermore, Plaintiff's delays in prosecuting the action also warrant tolling of interest. Interest should be tolled as it took Plaintiff over fifteen years to obtain a judgment, with the only delay attributable to Defendants being successful on appeal, which was necessitated by Citibank's own procedural failures and lack of standing.

17.     For the foregoing reasons, Citibank has failed to establish a valid claim against the Debtor's estate. The record establishes fatal gaps in the chain of title, contradictory and incredible affidavit testimony, and a complete lack of standing to commence and prosecute the underlying foreclosure action. Moreover, even if Citibank could somehow establish ownership (which it cannot), the claim amount must be reduced to account for the tolling of interest under applicable New York law.

**WHEREFORE**, it is respectfully submitted that the POC be disallowed in its entirety, or in the alternative, reduced as set forth in the Claim Objection, together with such other and further relief as to this Court seems just and proper.

Dated: September 5, 2025　　　　　　　　　　　　　　Respectfully submitted,
　　　　Huntington, New York

　　　　　　　　　　　　　　　　　　　　　　　**Rosen, Tsionis & Pizzo, PLLC**
　　　　　　　　　　　　　　　　　　　　　　　*Counsel for*
　　　　　　　　　　　　　　　　　　　　　　　*Prospect 631 Venture Corporation*

　　　　　　　　　　　　　　　　　　　By:    */s/ Avrum J. Rosen*
　　　　　　　　　　　　　　　　　　　　　　　Avrum J. Rosen
　　　　　　　　　　　　　　　　　　　　　　　Alex E. Tsionis
　　　　　　　　　　　　　　　　　　　　　　　38 New Street
　　　　　　　　　　　　　　　　　　　　　　　Huntington, New York 11743

Tel: (631) 423-8527
arosen@ajrlawny.com
atsionis@ajrlawny.com